being case number 24-191, Geico v. Patel. Good afternoon, your honors. May it please the court, Stephan Bellin-Fante on behalf of the appellants. Today I'm going to discuss the erroneous legal principles and clearly erroneous findings of facts that occurred with the district court that rose the level of abusive discretion and also a couple instances where even if you set those aside, the court could not have reached a conclusion that it reached under any reasonable interpretation. First, the court in addressing an argument that the appellants made regarding citing to a case that denied the motion to implement the preliminary injunction, the court stated, well, that's different. The circumstances are different here because here the underlying claims are in civil court have the same defenses of fraudulent billing and lack of medical necessity as the DJ is addressing. However, that's untrue. Nowhere is that allegation made. Nowhere are there any documents stating as much and that language was taken from another decision by the same court, I think the Tomasov decision, where in that situation there was documentation and allegations that it was the same defenses. The court cites to in relation to this entire discussion, the court cites the plaintiff's reply at five. Plaintiff's reply at five has, sorry. I'm going to interrupt you because it seems to me that a lot of your argument has been kind of overtaken by our decision in Triborough about the application of the Anti-Injunction Act and the scope of the court's discretion to consider state court proceedings and assessing the viability of a claim of this nature by the insurers that there's a pattern of fraudulent claims being made in the state courts that are appropriate for injunction, that are appropriate for injunctive and declaratory relief here. And we found in Triborough that that was a sustainable action that wasn't precluded by the Anti-Injunction Act and that was expressly authorized and so on. And in your 28J letter, I understood you to say that basically, well, that was a much more complicated scheme than this one. But I didn't understand you to be making any principled argument that it was different in kind or that the considerations that the District Court, that the Court of Appeals took into account in affirming the district or in addressing what the District Court did in Triborough are any different from here. So could you address the impact of Triborough on the District Court's ruling here? Absolutely, Your Honor. And just bear in mind that my submission was limited to 300 words for that letter that had to be. Well, now's your opportunity. Yeah, so now's my opportunity. I couldn't go into everything. And Justice Sardinia, I think you were on the Triborough bench that was argued. But the court in Triborough took a very deep dive into the facts of that case. And it repeatedly stated over and over again, we reach our decision based on the massive fraudulent scheme that has been brought to us here. Even the words unique, unusual circumstances, global level, and that was something that the court harped on on each one of these things. And you can't separate the facts of Triborough with the decision that was reached there. And I'll explain the difference. What about the irreparable harm point? OK, sure. The irreparable harm in Triborough was the ultimate instrument of irreparable harm was the rest judicata. But that was in light of the fact of the following points. First, because you had this 65 provider plus lay person owner plus marketing companies that personal injury people and other people paid fees to. It's a massive scheme, which would be almost impossible or extremely difficult to even litigate in federal court. You have that massive scheme plus the fact that the providers were filing the no faults, arbitrations, and collections actions one bill at a time. This court said it is essentially impossible to take a single bill for a single date of service, zoom out from that bill, those are the words the court used, and somehow incorporate this entire thing, this entire scheme, and make a valid decision as to whether that is legitimate. So in this case, we don't have arbitrations, but we have the no fault collection actions in the state courts, right? In the state courts, right. But there's, what is it, 604 that were filed right after the lawsuit? Right. In those individual actions, would your adversary be able, do you claim, to litigate what they now want to litigate, which is that there is this whole scheme? I believe they would. And I'll explain. Every single one of them, they would be able to raise the whole thing and say, my defense to this one no fault collection action. I can raise all the defenses and everything that's pending before Judge Matsumoto. Well, the discovery is very broad. See, the discovery and the issues before the trial court and civil court and no fault actions depends on what defenses you raise. So in other words, if you're only going to say, I only want to go forward on medical necessity, because it's the defendant who decides that, then of course the discovery and the issues are going to be restricted to that. But if the insurance company says, you know what, I want to raise my coverage issue, I want to raise my fraud issue, there's nothing stopping them from. Has the insurance company tried to do that in any of the cases pending or past? As far as our cases are concerned? Yes. No. And in fact, and here's the thing about this. Has it done anything like ask for a stay or consolidation or any other type of procedural? That's a very good. Would you oppose that? I would not oppose that. You would not oppose that if they sought all the discovery and interposed all the defenses that they're trying to do in this case. You would have no objection to them doing it in one of the state court actions? No. I mean, can I just explain? We file these cases together in the same venue at the same time to keep them together. And the reason that we do that is many times when these cases are together, it allows for easy joinder of cases when there are issues that are common to all of them. Unlike TRIBO, getting back to your honor's question, we didn't scatter these cases between arbitration here and the Bronx here and Queens here and this there and on a bill-by-bill basis, which plausibly, I'm not saying that's what the intent was, but you could plausibly reach a conclusion that, I mean, why would you do it that way? I mean, it sounds like you're kind of making things kind of difficult. No. Kept them together, filed them at the same time in the same venue in the same court where consolidation has happened before. I gave many examples where consolidation or joinder has occurred to deal either with all the fraud issues or you can select an issue, such as eligibility, consolidate them or join them for that purpose. And if that is not successful, what then happens? You go forward on the actual defenses that the insurance company raised in its non-claim forms. I even gave a case that I was involved on where it was a Malala Fraud and Incorporation defense that was first raised. They failed to establish that defense. And then the court said, OK, so you failed that. Now let's go forward on the prima facie case and deal with everything else. And the provider lost. I guess I'm just curious. I do really want to understand what you've conceded here. Because you have 604 cases. They're not presently consolidated, correct? They are not presently consolidated or joined, no. They're not. So they're filed in the same place, presumably at or about the same time. Yes. In any of those individual cases, would your adversary be entitled to broad discovery, not just about what your clients have done with respect to that one case, say case number three, not the 604? Would they be able to get discovery as to all of your clients' actions or inactions with respect to all of the 600 cases plus whatever other cases you may have involving them? They would be able to get discovery. Are you asking for which issues? Any issue or fraud issues? Would their discovery in any given case, or if they're consolidated, would their discovery in state court be coextensive with the discovery they're entitled to in federal court in the present action? Their discovery would be, and I'll explain why. Would, yes. They would be, and I'll explain why. And I started out with the abuse of discretion, because the problem is, this goes to actually a lot of the legal conclusions of the court races, which are incorrect. I'll give you an example, and I'll tie it in with what you're asking me right now. The insurance carrier is, it's true that about 15 years ago, the insurance carriers were precluded from raising most coverage defenses, or let's say that the items were never, that the services were never rendered and things of that nature. And what would happen in these federal cases is the judges would say, well, you have this 30-day timeline. They're precluded from doing this, this, and this. And then you're filing all these cases in court. They're in a very tough situation. And the district court cites to these older cases that stand for that proposition. But those cases have not been good law for the past 12 years, because the regulations changed and now have made it so that the insurance carriers can bring up any defense they want, absent lack of medical necessity and a couple other things like that. But what exactly was the error of law that the district court made? On abusive discretion review, we're looking to see whether there was irreparable harm, serious question going worse, and the public interest. And it seems to me that the Triborough answers some of those questions, that district court is authorized to enter an injunction like this. Sure, sure. So what is a key legal error that the district court made? OK, well, as far as the legal ones, because there are many more factual ones. But as far as the legal ones, the main thrust of the decision from the district court was that irreparable harm would stem from all the costs and expenses in having these cases being litigated in the civil court, which would result in possibly conflicting decisions amongst themselves, which may be rendered ineffective by this court. So it's the opposite of res judicata. OK, so their premise is that they don't explain it, Your Honor, and here's the thing. Not only do they not explain it, they cite to a previous case for that proposition, which says the exact same thing and also doesn't explain it. I thought that the res judicata worked the other way, that if the state court adjudications go first, they're going to have some preclusive effect in the federal litigation. And sorry, here's the error of law. For irreparable harm, they say that we're going to render it possibly, I'm going to issue a decision that's going to render all these things ineffective. But then in the Anti-Injunction Act discussion, they say the harm there or the problem there is res judicata, where they're going to render my decision ineffective. So the point being that this is what's happening with this decision and other decisions like it, Your Honor. And that's what we said in the State Forum. We said we don't want all these arbitrations out there. We're going to freeze it all because it's ridiculous to litigate this stuff piecemeal. And then, I don't know, say there are 800 or 200 cases where the arbitrators say in a binding way there was medical necessity here, or we don't find that you're able to, you, the insurance company, prove there was no medical necessity. And because they're limited to just doing it on a case-by-case basis, all the evidence that the insurer would be able to bring in a RICO case to show, no, no, this is a massive scheme. There are hundreds and hundreds of these cases where the claimants are bringing identical diagnoses that are just cookie cutter. Their similarities among one another demonstrate that they're really fake. None of that would be able to come before the arbitrators. And yet, their civil RICO claim would be trimmed down unfairly because they would be precluded from bringing in evidence as, say, 200 of those particular cases if they lost in the arbitrations. And I'm guessing, why isn't that still true here? I'll explain why. First of all, the premise that you cannot produce documentation from other claims as part of your defense for a civil court action is based on there's no case that says that. I'm not sure where that came up or how that became the conclusion because that's not true. And in fact, I cited it to numerous cases where the discovery is far broader. I'm talking about a single case. Financial records, tax returns, bank records, management documents, billing agreements, one case. As long as there is a founded basis for believing there's fraud, the appellate term in the state courts has repeatedly granted widespread discovery. Not only that, not only for them, for the plaintiffs. Because when the plaintiff seeks the SIU files, which go beyond, obviously, one case. It's the SIU, it's the fraud unit. So it's global insofar as a provider is concerned. We get it. There is nothing stopping an insurance company from taking all of the medical reports from 100 different patients. This, of course, is just going toward balancing of the equities, right? This doesn't go to, I think Judge Carney was asking it in a different question, which is about the irreparable harm. And there certainly would be irreparable harm if they're forced to go through all these individual civil actions, because they would never get their attorney fees back, right? I'm sorry, could you say that again? They have to litigate, in parallel, all these state actions. And it turns out they win the civil RICO case in federal court. Right. They're never going to be able to recover their attorney fees in all the state actions, right? But that has never been. Well, let's ask the premise. Would they ever be entitled to recover their attorney fees for defending the state actions? Their attorney fees for, I actually don't know, because I haven't thought about that, because that's never been irreparable harm. I mean. Well, it's irreparable. Money you can't get back. Because we often say, look, you can't come in and say, I have irreparable harm because it's going to cost me money, if, at the end of the day, you could be compensated for the loss of money, right? Because it's just money. You get paid now. You get paid later. It doesn't matter. I'm asking with respect to the attorney fees, is that a cost they might have to incur if they were required to litigate all these cases you brought in state court, and it's attorney's fees they would never be compensated for, assuming they were someday to win in federal court? Well. It sounds like they wouldn't get that back. You can tell me if that's wrong. I don't know if that's necessarily true, and I'll explain why. First, the attorney's fees actually belong to the clients, and no fault. I believe that there was a Department of Financial Services regulation that says that. So basically, it's- They're attorney's fees that they have to pay for themselves. I'm sorry, they're attorney's fees? Yeah, yeah, yeah. They're going to have to pay these lawyers here. Right. Maybe other lawyers. I don't know. Whoever's going to go into state court and defend their case, because you brought it. OK. And they pay out, well, let's make it up, $1 million to defend these 600 cases. Sure. Is there any scenario where the state court or the federal court can order your side to pay them the million bucks? Well, the state court could, because if they established that there was- if their allegation is that there was essentially fraud that went into the courthouse, and the courts were used as part of the fraud, then the court could issue a decision, essentially, that they were defrauded. And then the attorney's fees would have to be paid to them. There's nothing to stop them from doing that. And I don't see why they- Is it case law or a statute? I don't know. No, it's the CPL- I mean, it's the CPLR. I mean, if you- the judge can issue- the state court has wide discretion to issue a decision to rectify a situation where there's fraud committed upon the court, which is essentially what- What about the loss of all the court time? All the court dockets that are clogged by these cases, and the judicial time, and the deputy clerk's time, and so on, taken up by these cases, if these fraud allegations are ultimately validated? Well, Your Honor, I can't speak for the clerk. You know, I'm not- it's not the clerk who's claiming that there's reputable harm here. I mean, so that's not- No, I'm just thinking about it as a judge, frankly. No, no, I understand. I understand, but that's- Well, it's the public interest, right? You know, that's going way out- That's why we're in the injunctive interest. You have to- an injunctive relief, you have to look at the public interest, too, right? You have to look at the public interest, but at the same time, there has to be a weighing of the equities, and I just want to give- I want to give the court an example of what I'm talking- Why don't you wrap up quickly, though? Sure, sure. I just want to give the court just a quick example. In paragraphs 273 and 274 of the complaint, Geico claims that the collections of actions that have been filed have put a tremendous burden on us because they're frequent, they're expensive, and they say it's an essential part of the fraud. This is what they allege in their complaint. In the four years prior to this complaint, the civil court actions that they're complaining about, one case was filed. They put this in every single complaint, and the point that I'm making is this. If the filing of one civil court action is an essential part of a supposedly multi-million dollar fraud, and burdens them to the point that they need the federal court to reach in and pull them from that, every case, every case is going to essentially fit into, is going to require a preliminary injunction. Thank you. Thank you, counsel. Thank you. Morning, your honors. So, let me address a couple of points that Mr. Bellin-Fontaine made, specifically with respect to one thing you said, Judge Nardini, which is that, is there the capability to litigate the broader scheme in the context of the civil court? And the answer to that question is absolutely not. And if there was, then fundamentally, from their perspective, instead of filing 604 civil court actions, why didn't they file one consolidated state supreme court action where all of these things could be litigated in a broader range? No, no, no, I think the question is, why can't you, as an affirmative defense, say this is part of a fraudulent scheme, reaching discovery into the whole thing? Because in the civil court, the discovery is typically limited to the bill, or bills, that are before the court in the particular case. Have you ever asked, have you ever made a motion, or sought to consolidate the cases, state the cases pending the federal one? There have been attempts, historically, to do this. I'm asking a specific question to you. Have you, your client, in any of these 600 cases, made any kind of motion for procedural relief from the burden you're complaining about? In this particular case, no, because at the time that all of these cases were already filed, Judge Park, we had already filed the federal case with a declaratory judgment. And so, instead of going to the civil court and saying, well, let's consolidate them, we went to the district court. Oh, I see, so here you already had the relief. Right, here it wasn't like these cases were already pending at the time that our case was filed. At the time that our case was filed, there were, I think, one, maybe two, collection actions that were filed. And take into account that this practice had been operating for almost four years at the time. And so, all of a sudden, Geico comes forward with its complaint outlining a very wide-scale fraud scheme. To his point, the question of, is this distinguishable from Triborough? When you look at the, and you match these allegations up and the evidence in terms of pay-to-play, fraudulent treatment and billing practices, they're almost identical, except for the number of parties. But this is over a four-year period of time. To your point, Judge Park, there wasn't any historical collection activity. So we come in, we file our case, we get them served, and lo and behold, within a matter of weeks thereafter, they dump 604 cases into the civil court in Richmond County, okay, on a piecemeal basis. They break the bills down to the lowest common denominator. All right, it's not 604, it's actually 604 baked among multiple insureds, and in some cases, multiple cases for the same insured. So I understand the burden, financial and logistical. I'm not sure I understand the irreparable harm. So the irreparable harm arises, as this court identified in Triborough, from the premise of the inconsistencies of the decisions as to the various issues and as it relates to the civil court cases. So they bring the cases in. But what an inconsistent decision. Right. What might happen? Not only the inconsistency of the decisions, but the inability to get back the money that they're awarded. We'll break it apart. If you'll call us on the inconsistency, give us an example of an inconsistency that would be intolerable. Sure, and the inconsistency sort of runs two ways. Inconsistency between justifying the final decisions in these cases in relation to the broader scheme. So is an inconsistency possibly in one of the individual collection schemes, a certain treatment that's used is found to be experimental and not reimbursable, and in another case using the same treatment it's found to be reimbursable? Well, exactly. And that's a big point with respect to at least the three or four of the different types of services here. So part of the services that we say are experimental is the shock wave, which they mislabel, which is really radial pressure wave therapy. They get a decision in the civil court that says that, well, no, that's reimbursable and we disagree. They're going to come back in the federal court and they're going to say, hey, I had this decision from the civil court in which there was little or no discovery, and you're now precluded in your RICO claim or in your common law fraud. That's what I understood from the State Farm case was the idea that you have all those arbitrations, and here you would have civil court cases, where individual cases of patient A on date one with one treatment, that individual case there could be a decision that that was medically necessary, therefore reimbursable. And that would mean that you, the insurance company in the RICO case, would now be precluded through res judicata from arguing in your RICO case that it wasn't medically necessary. And in State Farm the idea was that they would have the ability in the civil RICO case to put together the evidence of all of the health care providers' activities, including the things that make it look suspicious, which would arguably make it more likely the insurance company could prove they're fraudulent, whereas if they were litigating in piecemeal, in each little arbitration, which is a tiny little window into what's going on, they could only litigate that particular episode on that day that they're not going to be able to bring all of their defenses to bear. And I'll give you the perfect example. Is that what you're arguing? Exactly. And I'll give you a perfect example, in this case, beyond the experimental nature of the issue that Judge Connie raised, which is if you look at the pattern of EMG treatments, right? So an EMG on an individual patient, as it relates to the number of nerves, number of muscles, the time. What is EMG? Electromyography. Essentially, it's a neurology test that's used to determine the existence of the lack of what's called radiculopathy, which is a nerve impingement in the system that they then attribute to the car accident. And it's not an inexpensive test. It's a test that costs several thousands of dollars that's done. And it's predicated on how many nerves, how many muscles you test. So the more that you test, the more you get paid, the more you can bill for. And so the findings and the nature of the nerves and the muscles, if I test 10 nerves for a particular patient, and I test five muscles, and I do it bilaterally, upper and lower, I'm going to send you a bill for $3,000 or $4,000. And then you're going to look at that. Well, you're going to look at that in a vacuum, to Judge Nardini's point. But if I'm testing the same muscles and nerves across a broad spectrum of patients, right, that present different circumstances that have different pathology, there's no way that, in a civil court case, that all of those other patients who got the same, and I think in Triborough, that pattern or cookie cutter or whatever treatment comes in to prove the lack of justification. So now. So maybe I was asking the wrong question of your opponent. Because I asked, wouldn't you get this, could the insurance company get such broad discovery in the civil actions in New York State? And he said, yes. I guess what I didn't ask, and he can answer this when he comes back up, is, would all of that evidence be admissible? And I thought the implication of his argument is, sure, that would be admissible, and that you could basically litigate all of this in the state court. The difference from state farm being, well, those are arbitrations. They are, of necessity, narrow. People put blinders on when they do the individual arbitrations. But you wouldn't need to put blinders on in the state court. What is your response to that? It's really the same thing, Your Honor. I mean, you're talking about a court that has, to Judge Carney's point, has anywhere from 100,000 to 200,000 cases that are making their way through the civil court system. The litigation, literally, the trials of these cases and the litigation is so abbreviated, it's not the same as arbitration. And the cases, by the way, that Mr. Belenfante refers to, which are these consolidated, broad-ranging cases, are cases involving corporate practice of medicine. They're singular issue cases involving, and I've been involved in one of them historically 15 years ago. And those are the cases where they say, well, OK, this is an issue, a singular issue, that goes across all the claims. And so, for example, even in Triborough, this court, in the decision, recognized that the type of a scheme or pattern of behavior, which involves pay-to-play arrangements, which involves protocol treatment, billing irregularities, which involves, in this case, treatment by unlicensed individuals, all of those things, you have to step back. In other words, Can I just ask you, just to get to the chase, are you effectively saying that you disagree with your opponent Totally. As to whether these issues could be, all of the defenses you want to raise, or I guess the claims you want to raise in federal court, could not be raised as defenses in state court? Is that what you're saying? Yeah. And absolutely, Your Honor, and to his point, Is your answer the same if the cases are consolidated? If you make a showing and you get a state court proceedings all consolidated, so we try to eliminate the obscuring the pattern of fraud? The practice of trying to consolidate cases among multiple claims in the absence of a singular issue, because those are the cases that Mr. Belenfante is talking about, is virtually inconceivable. It's virtually inconceivable because these are spread out amongst dozens of judges in the courthouse. And so the only time that these things have been successful is if it's done by stipulation, or if it's done in a particular situation like, I'll go back to a case called Andrew Carruthers. Well, I'm going to pause and maybe just ask you, because I think Judge Park had a question that was on the table that I didn't hear a full answer to, at least, which is the irreparable harm question. Because I think we're talking about money. My understanding is what I was saying to your opponent, that the irreparable harm that you're claiming is not that you have to pay out the claims, because you can always try to recoup the claims. But monetarily, it would be that you have to pay, well, your client has to pay you all, or whoever, to defend the cases in New York State Court. And those attorney fees will never come back your client's way. I think there's three parts to that, Your Honor. I think the first part of the irreparable harm is what Judge Carney was referring to, which has to do with the inconsistency of the judgments and the impact of that on the broader case, which is what the court dealt with in Triborough. That's the restricted cottage. Well, right. It would be the restricted cottage or collateral. It could be collateral estoppel. And then beyond that, in terms of the money damages, the claims that are, if we lose at the civil court level, we're never getting that money back. That's a final determination on a particular situation for which you couldn't recover. This is what the courts have uniformly said. And then you raise a very interesting question, which is, yes, we've litigated, I don't know, how many of these cases we've spent hundreds of thousands, if not millions of dollars in attorney's fees. There is no fee shifting provision in the New York no-fault regulations. Well, he says that if they brought the claims fraudulently, the New York State judge could award attorney fees to you. Is that a true or false statement? That would be a 130-1-1 application for fraud against the lawyers. Not against the clients. And that's, if you look at the New York no-fault regulations and the statute, attorney's fees only go one way. Which is why. Which way? They go their way. Why couldn't you claim it as damages as part of a fraud if that was part of the scheme under RICO? Because the, because if you look at the scheme and the way, at least in this case, we have not framed it that way. We're only looking to get back the voluntary payments that we made to the healthcare provider, okay? Because then we would have to name the lawyers as part of the scheme, your honor. And so in good conscience, I have to give Mr. Belenfante and his partner the benefit of the doubt that would say you're prosecuting these in good faith. I would have thought it would have been more of a res judicata issue, though. Well. The idea that how can you claim if a state court has adjudicated that you owe money or a client owes money to their clients, then you're not allowed to relitigate that in a civil RICO context. I think it's both. I think one, it's res judicata because we've lost. And so how do we come back and get the money back at a later point in time by proving the broader scheme? And number two, I don't know how, if there's no fee shifting or even equal. I mean, there is a specific regulation that says that if they win, they get paid. If we win, we get nothing. So I think that is consistent with the concern that the court raises about the loss of income. And again, to the time, your honor, to the court and the public interest, we can litigate all these issues in the district court. What are they afraid of? What are they afraid of in litigating the broader issues in the district court? They shouldn't be afraid. They should want to get this out if they want to vindicate their reputation, right? So to Triborough's point, bringing the 604 decision, you know, 604 cases isn't just a mere coincidence. Dropping them on us after we file the complaint, you can infer whatever you want from that. But fundamentally, when we look at this case, and I know my time's up, and I'm just, let me wrap up. This case is not materially different in any respects than Triborough. There is nothing in the record that they point to that shows that the district court abused its discretion. This court answered the AIA issues in Triborough, and the same issues that existed in Triborough as it relates to the AIA exist here. So there is really, and the reason that the 28, Rule 28 letters from the other side don't really distinguish or address Triborough is because there's really no meaningful distinction between the two cases. Thank you, counsel. Thank you, your honor. Your honor, your honor, you just heard the Geico's counsel say the only way that could work was if we stipulated to join these cases. That's a solution which has been raised in the papers, and if that's a solution that counsel himself is admitting would work, then how can they claim irreparable harm on one hand and not even try a solution that they know about in order to offset that problem? Number two, the question I think your honor had asked is about the inconsistent decisions between the courts. One of the examples that was given by the counsel, Mr. Levy was, well, if this type of service is not really a reimbursable service, and the court finds it one way here, the court may find it, you know, that it is a type of reimbursable service here. But if the first court in civil court finds that outcome assessment test, that's one of the things that are at issue here, is not reimbursable, it's not a reimbursable service, that's res judicata and collateral estoppel on every other case in the same civil court. So how are you gonna get? No, collateral estoppel, that's the issue. But what you have in this setting is the possibility of looking at a series of claims, all of which across the board use the service at the highest level possible, notwithstanding the changing elements of the individual who was treated. And so you could show a pattern of billing to the max on a particular service, and that in a way that suggests fraud, but that would not be visible to the individual judge in the state court proceeding one by one. But Your Honor, the point that I'm making is, remember, it's their burden to establish their motion. What I'm saying is, you can present this. They have produced no evidence that you cannot, I've done this myself with peer review reports in the opposite way, where I've gathered together a ton of peer review reports that are relied upon by Geico specifically to deny cases. And I've said, yes, the case was about a peer review report, but we said, no, look at this, they're all the same. Every one of these are the same in order to establish my case in court. There's absolutely nothing. What has Geico pointed to? Could you address the concern I have about the timing of the filing of 604? Yes, yes. So, this actually works, I believe, into exactly what plaintiff is saying. So, very few filings occurred prior to the complaint. And as I mentioned in my papers, there was a dispute between the billing company and the provider, Dr. Patel, in this case. And I even pointed out the fact that if you look at the arbitration decisions, there were 70 arbitrations in the four years prior to the complaint. There were a different law firm handling them, a law firm that's tied in with that billing company. And as I explained, and as the exhibit that I presented will establish, there was a dispute, and finally, when the documents got sent over to us, we filed not just all the Geico cases, all the insurance cases about four or five months after Geico filed its RICO. In fact, one of the points that I make is some of the insurance companies were filed before Geico who have no RICO against the provider. Who are we trying to, it makes no sense. I just want to back up a little bit. Did you ask for an evidentiary hearing on the PI motion? On the, I'm sorry? On the preliminary injunction motion in the district court? No, I didn't think I needed one. And the reason why is because this is an unverified complaint where the entire kickback scheme is upon information and belief, where there are no exhibits at all about any kickbacks or anything like that. No medical records, nothing. Where the affidavit does not mention any of the allegations. Where the affidavit swears to the following under penalties of perjury, and that's the last line in the affidavit. There was nothing that was sworn to under the penalties of perjury. So I said, yeah, I'm not gonna, there's no evidence needed. But then the court ended up, I didn't even get to it, but I was trying to do this when I first stepped up here. But the court adopted each of these allegations and said, oh, they presented evidence that technicians were performing the services. No evidence, just a paragraph in the complaint. And this court has held many times allegations in an unverified complaint are not evidence. I mean, it's repeated over and over. That on itself is an abuse of discretion before we even talk about the law. So many, many problems with this case. Yeah, so I just wanted to address the points. Yeah, I appreciate that. Yeah, yeah. Okay, I have nothing further. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.